**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite #1090
Phoenix, Arizona 85012
Telephone:  (602) 277-0157
Facsimile:  (602) 230-9250

TOD F. SCHLEIER, ESQ.  #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ.  #011696
Email: brad@schleierlaw.com

**BELIVEAU FRADETTE GALLANT**
91 Bay Street
Manchester, N.H. 03104
Telephone: (603) 623-1234
Facsimile: (603) 623-4817

RICHARD E. FRADETTE  #844
Email:  Rick@beliveau-fradette.com
*Pro hac vice* pending

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Derek E. Dindal, PharmD. a single man, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **(JURY TRIAL DEMANDED)** |
| MedAvail Pharmacy, Inc., a foreign corporation; | |
| Defendant. | |

Plaintiff Derek E. Dindal, PharmD., by and through counsel, for his Complaint against

Defendant MedAvail Pharmacy,  Inc.  alleges:

## I.   NATURE OF CLAIM

1.      This is an action brought under Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008, to correct unlawful employment practices on the basis of disability, to vindicate Plaintiff's rights, and to make him whole. Plaintiff sues on account of the fact that, despite his qualifications as a pharmacist, Defendant terminated his employment because he was regarded as a person with a physical impairment, or, alternatively, because of the fact that his impairment actually and substantially limits him in one or more major life activities. Moreover, Plaintiff's employment was terminated due to his reporting mislabeled prescription drugs by Defendant, in violation of the public policy of the States of Illinois and Arizona.

## II.   JURISDICTION

2.      Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12101 *et seq.* (the ADAAA), 28 U.S.C. §§ 1331 and 1343(a)(4), and 28 U.S.C. §§ 2201 and 2202; and applicable state laws, rules and regulations.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claim because said claim is so related to Plaintiff's federal claim that they form part of the same case or controversy pursuant to 28 U.S.C. §1367.

/ / /

### III.    VENUE

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant's conduct business in this district and the unlawful actions and practices alleged herein were committed within this district.

### IV.    PARTIES

5.      Plaintiff Derek E. Dindal  ("Plaintiff") is a single man and duly licensed as a pharmacist by the State of Arizona.

6.      Defendant MedAvail Pharmacy, Inc.  ("MedAvail") is a Canadian corporation headquartered in Mississauga, Ontario, Canada which is doing business in the State of Arizona. As more fully described below, Defendant MedAvail is a pharmacy technology and services company that has developed and launched a mobile-enable self-service pharmacy center solution.

7.      Defendant MedAvail  is an employer subject to the ADA, as amended.

### V.    PROCEDURAL REQUIREMENTS

8.      On July 24, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant MedAvail complaining of disability discrimination and retaliation.  A copy of said Charge is attached hereto and incorporated herein as Exhibit A.  The EEOC and Arizona Civil Rights Division ("ACRD") have a worksharing agreement between the two entities.  On October 23, 2018, the ACRD issued a Notice of Right to Sue to Plaintiff which expires on January 23, 2019.  A copy of said Right to Sue is attached hereto and incorporated herein as Exhibit B.  Plaintiff has

requested a Notice of Right to Sue from the EEOC but due to the holidays and the pending government shutdown, the EEOC Right to Sue has been delayed. Plaintiff is entitled to receive a Right to Sue letter from the EEOC and may proceed absent such letter as he has received a Right to Sue letter from ACRD. This action has been filed within ninety (90) days after Plaintiff received his Notice of Right to Sue and Plaintiff has therefore satisfied all procedural requirements necessary to bring this action.

## VI.  FACTUAL BACKGROUND

### A.  Plaintiff is Employed by MedAvail.

9.     Plaintiff is a licensed pharmacist in the State of Arizona who graduated from the University of Arizona, Tucson, with a Doctor of Pharmacy degree on May 20, 2012.  Plaintiff has a disability that substantially limits him in one or more major life activities.  Plaintiff was a qualified individual with a disability or regarded as having a disability pursuant to the ADA and the 2008 ADA Amendments.

10.     On January 4, 2018, Plaintiff and the Arizona Board of Pharmacy entered into a Consent Agreement and Order of Probation related to his disability.  As a result of the Consent Agreement, Plaintiff completed in-patient treatment and subsequently entered into a contract with Pharmacists Assisting Pharmacists of Arizona ("PAPA") and was placed on five years' probation by the Arizona Board of Pharmacy.  As part of the Consent Agreement, Plaintiff was required to provide subsequent employers with a copy of the Board's Order during the term of his probation.  Plaintiff provided Defendant with a copy of the Board's Order and Defendant agreed to cooperate with PAPA and the terms of the Order as Plaintiff's employer.

11.     On March 2, 2018, Plaintiff accepted an Offer of Employment with Defendant MedAvail; a true and correct copy of the executed Offer of Employment is attached as Exhibit C.  Paragraph 24 of the Offer of Employment provides the law of the state of Illinois governs the interpretation of this Agreement. As required by the Consent Agreement, Plaintiff provided Defendants with a copy of the Consent Agreement and Order of Probation.

12.     On April 9, 2018, in preparation for the PAPA steering committee meeting in Phoenix, Plaintiff received an Employer's Evaluation Form of PAPA Participant from his supervisor, Rodney Squire, PharmD.  As Defendant had agreed to do, Squire cooperated with PAPA and evaluated Plaintiff's ability to perform as a pharmacist.  In a rating system from 1 to 5, with 1 being the highest, Plaintiff received three scores of "1" and two scores of "2" and was rated Excellent.

13.     Defendant MedAvail has developed the MedAvail MedCenter which provides a pharmacy anytime, anywhere, kiosk-based solution by enabling automated medication dispensers under the supervision of licensed pharmacists in under 90 seconds.  These are referred to as Automated Prescription Machines – or APM's. Patients who use the MedCenter have 24/7 access to multi-lingual pharmacist services through audio-visual communications built into the pharmacy center.  Licensed tele-pharmacists perform all the professional functions associated with prescription dispensing.

14.     Defendant MedAvail has deployed its MedCenter platform in the United States and around the world with customers that include some of the world's leading pharmacy retailers, general retailers, hospital systems, clinic operations and employers.  These include Walgreens, Banner Health, Geisinger, and Bayless Integrated Health.  Defendant MedAvail's

MedCenter is currently being used by the Health Services Department at Arizona State University.

**B.   Plaintiff Discovers and Reports Mislabeling of MedAvail's Medications.**

15.   On Friday, April 27, 2018, during a prescription dispense at M4-00118 Dobson, Plaintiff discovered one of the packages that was about to be dispensed was incorrect. Plaintiff intended to dispense BUSPIRONE HCL 10 MG TABS, however, during the quality assurance unit of work, Plaintiff realized the automated MedCenter actually picked Duloxetine HCL 30mg Capsules and Clopidogrel 75mg tablets.   Plaintiff cancelled the prescription dispense, informed the patient of the technical 'error' and reported internally to IT to suspend activities at ALL MedCenters.   Plaintiff was concerned this was not just an isolated problem concerning the one kiosk.

16.   Plaintiff then called his supervisor, Robert Squire, soon after reporting the incident to IT.   Squire asked Plaintiff to double check that he had inputted and verified the prescription accurately; Plaintiff confirmed that and the error was with the automatic dispensing machine.   Squire did not seem convinced of Plaintiff's findings or concerned.

17.   Plaintiff then spent time on the phone trying to explain to Valerie Iwinksi, Squire's supervisor, what had occurred.   Iwinski told Plaintiff that "we do not need to shut down the machines" and "if you put garbage in, you will get garbage out".

18.   Defendant MedAvail's Helpdesk investigated the incident reported by Plaintiff. As a result, it was determined that the incident was a result of 5 prescription drug package definitions with duplicate package codes. The investigation reviewed the rest of the definitions and identified one more which was mislabeled and that these problem definitions

accounted for 28 packages across APM MedCenter.  Emails sent to Plaintiff confirmed these results and Plaintiff learned that the duplicated labels for all 5 medications were generated in January 2018.

**C.      Plaintiff's Employment is Terminated.**

19.     On April 29, 2018, Squire called Plaintiff at home and asked him to come in to "discuss and assist in documenting the incident."  When Plaintiff arrived, Squire asked him to pull up a chair as Plaintiff was reaching to present to Squire the evidence.  When these erroneous transactions occurred, Plaintiff had taken multiple screen shots on the computer showing visually what he was comparing.  Squire grabbed the screen shots and threw them to the side, stating he had copies of them.  Within minutes, Squire asked Plaintiff to resign or face termination.  Plaintiff was stunned and confused.  Notwithstanding the evaluation Squire had provided Plaintiff just 20 days earlier, Squire cited the following for the decision to request his resignation or he would terminate Plaintiff's employment:

- Plaintiff's overall job performance was poor;

- Plaintiff could not execute a demo OTC item;

- Plaintiff had sent amoxicillin reconstitutibles without labels to MedCenters, but Plaintiff had absolutely nothing to do with that;

- The counseling Plaintiff provided to a patient two weeks earlier was not clinically sound;
- Plaintiff mis-bagged a patient's prescription.  Although true, Plaintiff was told at the time to be more careful and that "we all make mistakes."  Plaintiff received no write up or disciplinary action; and

- Business was slowing down and APM was cutting hours and no longer needed Plaintiff. However, on May 16, 2018, APM opened a new job position for 'staff pharmacist' on Indeed.com – Plaintiff's previous title at APM was 'staff

pharmacist'. Plaintiff applied to the job posting - this can be verified on his job search history.

Most importantly and revealing is the fact that, during the meeting, Squire told Plaintiff that he was being let go because of "events that happened in your past" and that Plaintiff "had a target on his back," and was a "company liability", blatant references to Plaintiff's disability and history of disability.

20.     Plaintiff was stunned and not in a proper mental state to make decisions.  He told Squire he would get back to him, he returned the pharmacy key to Squire who escorted Plaintiff out of the building.  While driving home, Plaintiff pulled his car over to digest what had just occurred.  He texted Squire to express his disappointment and betrayal for being honest about his disability.  In the text, Plaintiff informed Squire he would be seeking legal counsel.  Five minutes later, Squire called Plaintiff telling him not to worry about any resignation or termination letters and that Plaintiff was still scheduled to work on Wednesday, May 2.

21.   On May 2, 2018, Plaintiff met Squire in the conference room; Valerie Iwinski was in teleconference with them.  Iwinski then repeated all the information Squire had previously told Plaintiff on April 27 and that Plaintiff was terminated effective immediately.  Iwinski stated: "you are asking too many questions.  You should not have to be asking these questions this late in the game."  Plaintiff walked out with the termination letter in his hand.

22.     Upon information and belief, as a result of mislabeling medication, the Arizona Board of Pharmacy issued a Letter of Concern to Defendants in July 2018.

**FIRST CLAIM FOR RELIEF**

**(Disability Discrimination in Violation of the ADA, as amended – Regarded as Disabled)**

23.     Plaintiff realleges the allegations of Paragraphs 1-22 above as if fully set forth herein.

24.     At all times relevant hereto, Defendant has been subject to the requirements of Title I of the Americans with Disabilities Act as Amended by the ADAAA.

25.     At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(C) inasmuch as he was regarded as a person with an impairment as defined by the Act.

26.     Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job as advertised.

27.     Upon his report of the systematic dispensing errors due to mislabeling, Defendant became concerned about Plaintiff's disability impairments.

28.     Despite his qualifications for the position of Pharmacist, Plaintiff's employment was terminated because of his disability or because he was regarded as being disabled.

29.     Defendant's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

30.     As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

31.     In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, damage to his reputation due to him being terminated, and other non-pecuniary losses all in an amount to be established at trial.

32.     Moreover, Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible, Plaintiff is entitled to an award of damages for past and future lost wages and benefits of employment.

33.     Defendant's discrimination was willful, malicious and in reckless disregard to the rights of Plaintiff and he is therefore entitled to recover punitive and exemplary damages.

**SECOND CLAIM FOR RELIEF**

**(Disability Discrimination in Violation of the ADA, as Amended – Actual Disability)**

34.     Plaintiff realleges the allegations of Paragraphs 1-33 above as if fully set forth herein.

35.     At all times relevant hereto, Defendant is subject to the requirements of Title I of the Americans with Disabilities Act as Amended by the ADAAA.

36.     At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(A).

37.     Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job as advertised.

38.     Upon his report of the systematic dispensing errors due to mislabeling, Defendant became concerned about Plaintiff's disability.

39.     Despite his qualifications for the position of Pharmacist, Plaintiff's employment was terminated because of his disability.

40.     Defendant's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

41.     As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

42.     In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, damage to his reputation due to being terminated and other non-pecuniary losses all in an amount to be established at trial.

43.     Moreover, Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible, Plaintiff is entitled to an award of damages for past and future lost wages and benefits of employment.

44.     Defendant's discrimination was willful, malicious and in reckless disregard to the rights of Plaintiff and he is therefore entitled to recover punitive and exemplary damages.

**THIRD CLAIM FOR RELIEF**

**(Public Policy Tort Claim – Illinois Law and/or Arizona Law)**

45.     Plaintiff realleges the allegations of Paragraphs 1-44 as if fully set forth herein.

46.     The label on a bottle, container or vial of medication serves a critical purpose, letting the patient know what the medication is, the dose of the drug, the timing of taking the

medication, and any drug interactions that might be harmful to the patient.  The labels enable the patient to take the medication in the correct manner.  However, if something is mislabeled, the consequences can be deadly.

47.    Mislabeling a prescription involves, inter alia, misidentifying the drug in the container, printing improper use instructions on a drug label, or including insufficient or invalid warnings surrounding use of the drug.   The consequences of mislabeling could include:  dispensing the wrong medication, overdose mistakes, under-dose errors, toxicity and poisoning and death.  When a person gets a prescription filled at a pharmacy, he or she relies on the pharmacist to have placed the right medication in the container, included medication of the correct dosage, and provided the proper directions about how to take the medication.

48.    Section 502 of the Federal Food, Drug and Cosmetic Act (FFDCA) contains provisions on misbranding including some that relate to false or misleading labeling.   A device's labeling misbrands the product if its labeling is false or misleading in any particular manner.

49.    The State of Illinois has comprehensive statutes governing the licensure of pharmacists to insure that patients receive the proper medication when getting a prescription filled.  225 ILCS 85/22 provides, inter alia: "no person shall sell or dispense, at retail, any drug, medicine or poison, without affixing to the box, bottle vessel, or package containing the same, a label bearing the name of the article distinctly shown, and the directions for its use, with the name and address of the pharmacy wherein the same is sold or dispensed."   The statute further states:  "…the label affixed to the box, bottle, vessel, or package containing the same shall show: (a) the name and address of the pharmacy wherein the same is sold or

dispensed; (b) the name or initials of the person, authorized to practice pharmacy under the provisions of this Act, selling or dispensing the same, (c) the date on which such prescription was filled; (d) the name of the patient; (e) the serial number of such prescription as filled in the prescription files; (f) the last name of the practitioner who prescribed such prescriptions; (g) the directions for use thereof as contained in such prescription; and (h) the proprietary name or names or the established name  or names of the drugs, the dosage and quantity, except as otherwise authorized by rule of the Department."

50.     Arizona statutes provide as follows:

A.R.S. § 32-1967. Acts constituting misbranding of a drug or device; exceptions; interpretation of misleading label

A. A drug or device is misbranded: 1. If its labeling is false or misleading in any particular.

A.R.S. § 32-1965. Prohibited acts

The following acts or the causing of any thereof, in addition to any others so specified in this chapter, are prohibited:
1. The manufacture, sale, holding or offering for sale of any drug, device, poison, or hazardous substance that is adulterated or misbranded.

51.     Plaintiff's employment was terminated in violation of a clear mandate of both Illinois and Arizona public policy that prescription medications dispensed be properly labeled, to wit: due to his reporting wrongful conduct and unsafe, inaccurate labeling of prescription medications by Defendant affecting the health, safety and welfare of Illinois and Arizona residents where Defendant's MedCenter dispensaries were located.  Defendant's subsequent investigation confirmed the mislabeling of five other prescription medications.

52.     As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

53.     In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, damage to his reputation due to being terminated and other non-pecuniary losses all in an amount to be established at trial.

54.     Moreover, Plaintiff is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible, Plaintiff is entitled to an award of damages for past and future lost wages and benefits of employment.

55.     Defendant's retaliation was willful, malicious and in reckless disregard to the rights of Plaintiff and he is therefore entitled to recover punitive and exemplary damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.     For compensatory damages as proven at trial;

2.     For punitive and exemplary damages as proven at trial;

3.     For reinstatement;

4.     For reasonable attorneys' fees and costs; and

5.     For such other relief, the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 18th day of  January 2019.

SCHLEIER LAW OFFICES, P.C.


s/Tod F. Schleier
Tod F. Schleier

BELIVEAU FRADETTE GALLANT.


s/ Richard E. Fradette
Richard E. Fradette
Attorneys for Plaintiff